# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

ARCARE INC.                                                                                               PLAINTIFF

v.                                 CASE NO. 4:17-CV-00558 BSM

QIAGEN NORTH AMERICAN HOLDINGS INC.
and QIAGEN, INC.                                                            DEFENDANTS

## ORDER

Plaintiff ARcare, Inc.'s motion to remand [Doc. No. 12] is granted except as to the issue of attorneys' fees and costs.

## I. BACKGROUND

ARcare, Inc. ("ARcare") initially filed this lawsuit in the United States District Court for the Central District of California, alleging Qiagen North American Holdings ("QNAH") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. section 227, *et seq*. *See ARcare v. Qiagen North American Holdings, Inc.*, Case No. 2:16-CV-7638, ECF No. 1 (C.D. Cal. Oct. 13, 2016). ARcare claimed that QNAH violated the TCPA by sending ARcare and other plaintiffs (1) unsolicited faxes to parties with which it had no preexisting business relationship ("unsolicited fax claim") and (2) by sending faxes that did not comply with the statute's opt-out notice requirement ("opt-out notice claim"). QNAH moved to dismiss, asserting that ARcare lacked Article III standing. *See id.*, ECF No. 14 (C.D. Cal. Nov. 23, 2016). The Central District of California granted the motion to dismiss without prejudice because ARcare's injury was not traceable to Qiagen's alleged violations of the TCPA. *See id.*, ECF No. 31 (C.D. Cal. Jan. 19, 2017).

ARcare refiled its complaint in Lonoke County Circuit Court. Despite its previous assertion that a federal court lacked jurisdiction, QNAH removed the case to federal court. *See ARcare v. Qiagen North American Holdings, Inc.*, Case No. 4:17-cv-00120-BSM, ECF No. 1 (E.D. Ark. March 2, 2017). ARcare moved to remand based on issue preclusion and judicial estoppel, and the motion was granted. *Id.*, ECF Nos. 5, 6, 20 (E.D. Ark. March 2, 2017).

QNAH has once again removed to federal court. *See* Doc. No. 1. QNAH argues that federal jurisdiction is now proper because ARcare has fundamentally changed its theory of recovery under the TCPA, thus removing the issue identified and ruled upon by the Central District of California in dismissing the original complaint. Moreover, QNAH argues that ARcare amended the complaint to include Qiagen, Inc. ("Qiagen"), a separate corporate entity, which cannot be precluded or estopped by a prior case to which it was not a party.

Remand, however, is proper because both issue preclusion and judicial estoppel still prevent defendants from arguing that a federal court has jurisdiction. This is because Qiagen is a party in privity with QNAH for preclusion purposes, the issue of subject matter jurisdiction over the unsolicited fax claim is common to both cases, and it is inequitable to foreclose preclusion based on the Ninth Circuit's decision in *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017).

## II. DISCUSSION

Three things have changed since this case was previously remanded to Lonoke County Circuit Court. First, plaintiff has joined QNAH's wholly owned subsidiary, Qiagen, as a

defendant. Second, plaintiff has amended its complaint to drop its opt-out notice claim. Third, QNAH argues that a change in Ninth Circuit case law independently forecloses issue preclusion and judicial estoppel. *See id.*

Rather than engaging in another analysis of the individual factors for issue preclusion and judicial estoppel, the discussion herein simply addresses these three new developments. Because none of these changes prevents the application of issue preclusion or judicial estoppel, defendants are still precluded from arguing that federal jurisdiction is proper and are bound by the prior order remanding the case to Lonoke County Circuit Court. *ARcare v. Qiagen North American Holdings, Inc.*, Case No. 4:17-cv-00120-BSM, ECF No. 20 (E.D. Ark. March 2, 2017).

    A.    <u>Addition of Qiagen as a Defendant</u>

Issue preclusion requires that "the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit." *Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010). Defendants argue that the inclusion of Qiagen as a defendant defeats issue preclusion because Qiagen was not a party in the Central District of California. This argument, however, is unpersuasive because Qiagen is a party in privity with QNAH.

The Supreme Court has identified six instances in which a nonparty may be in privity with a party in a prior lawsuit. *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008). One of the factors identified in *Taylor* is relevant here, namely, whether the nonparty was "adequately represented by someone with the same interests who [wa]s a party to the suit." *Id.* at 894 (citations omitted); *see also Continental Western Ins. Co. v. Federal Housing Finance*

*Agency*, 83 F. Supp.3d 828, 833–36 (S.D. Iowa 2015). "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned . . .; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. at 900. Adequate representation may also require that a nonparty had notice of the original suit. *Continental Western Ins. Co.*, 83 F. Supp.3d at 834. Explicit evidence showing that the original party acted in a representative capacity for the nonparty is unnecessary, and it can be inferred from the party's conduct. *Id.* at 834–35.

First, the interests of QNAH and its wholly owned subsidiary, Qiagen, are aligned. QNAH sought dismissal of the California lawsuit on a number of grounds, including subject matter jurisdiction, a failure to state a valid claim under the TCPA, and the improper allegation of a "fail-safe" class. *ARcare*, Case No. 2:16-CV-7638, ECF No. 14 (C.D. Cal. Nov. 23, 2016). Although QNAH now argues that Qiagen was entirely responsible for sending the faxes at issue and is the proper defendant in this lawsuit, QNAH vigorously defended the case in the Central District of California, seemingly on behalf of its subsidiary, and obtained a dismissal. *See Continental Western Ins. Co.*, 83 F. Supp.3d at 834–35. Moreover, the close corporate relationship between QNAH, a parent holding company, and Qiagen, its wholly owned subsidiary, supports a finding that their interests are extremely similar, if not identical. *See id.* Finally, that QNAH and Qiagen are now jointly defending this case, are represented by the same counsel, and are advancing similar arguments to those previously raised in California further supports a finding that the defendants' interests are

4

aligned.  *See id.*; Doc. No. 14.

Second, QNAH effectively acted as Qiagen's representative for due process purposes. Unlike *Taylor*, in which the Supreme Court rejected a theory of "virtual representation" between two plaintiffs who "were legal and actual strangers to one another," QNAH and Qiagen are far from strangers.  *Continental Western Ins. Co.*, 83 F. Supp.3d at 836.  The preexisting legal relationship between defendants as holding company parent and wholly owned subsidiary, while not dispositive, weighs in favor of finding that QNAH knowingly acted as a representative of Qiagen in the prior case.  *C.f. FastVDO LLC v. LG Electronics Mobilecomm U.S.A., Inc.*, Case No.: 16-cv-02499-H-WVG, 2016 WL 9526400, at *4 (S.D. Cal. Dec. 13, 2016).  *But see Continental Western Ins. Co.*, 83 F. Supp.3d at 837.  Moreover, considering defendants' near-identical interest in the outcome of the litigation and QNAH's purported knowledge that Qiagen was responsible for sending the faxes at issue, it would be somewhat silly for QNAH to claim that it did not know it was acting as Qiagen's representative in the Central District of California.

For these reasons, the addition of Qiagen as a defendant does not prevent issue preclusion or judicial estoppel.

### B.  <u>Voluntary Dismissal of the Opt-Out Notice Claim</u>

Issue preclusion applies when an identical issue has already been decided in a case and subsequently arises in another.  *See, e.g.*, *Smith v. Bayer Corp.*, 564 U.S. 299, 302 (2011).  Defendants argue that the precise issue before the Central District of California was

whether ARcare had Article III standing to assert its opt-out notice claim. Resp. Mot. Remand, Doc. No. 16 at 12. Because ARcare subsequently amended its complaint to dismiss the opt-out notice claim, defendants assert that the initial Article III standing issue has been cured, that removal to federal court is now proper, and that issue preclusion no longer applies. *Id.* ARcare's voluntary dismissal of the opt-out notice claim, however, does not defeat issue preclusion because the Central District of California ruled that ARcare lacked Article III standing to pursue its unsolicited fax claim.

Defendants' proposed framing of the prior court's Article III standing analysis is simply not how the issue was briefed nor is it consistent with the result that was reached. First, it ignores the fact that ARcare separately alleged the unsolicited fax claim and that QNAH did not frame the Article III standing issue this narrowly in its brief. Indeed, QNAH argued that "[p]laintiff cannot connect its claimed loss of "paper, toner, and ink consumed in the printing of [QIAGEN's] faxes" and "time that otherwise would have been spent on Plaintiff's . . . business activities with Qiagen's alleged failure to obtain prior express invitation *or* include an appropriate opt-out notice." *Id.*, at Ex. A, 8 (also noting that "those injuries are unrelated to Qiagen's alleged violation of the TCPA because *Plaintiff would have been no better off had Qiagen obtained Plaintiff's prior invitation . . .*") (emphasis added). Therefore, defendant QNAH argued that ARcare had no standing to raise either claim and not simply the opt-out notice claim.

Next, defendants' proposed reading is inconsistent with the result that was ultimately reached. Adopting the defendants' reading of the California order, which limits the Article

6

III standing analysis to the opt-out notice claim, suggests that the district court completely missed or ignored a jurisdictional analysis of the unsolicited fax claim and still dismissed the whole case for lack of subject matter jurisdiction. This leads to an illogical result. If the Central District of California limited its Article III standing analysis to the opt-out notice claim, it would be ignoring its potential jurisdiction over the unsolicited fax claim. Indeed, the district court could still possess subject matter jurisdiction over the unsolicited fax claim, and when a federal court has subject matter jurisdiction over a claim, it has a duty to exercise it. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them") (citations omitted).

While it is true that the California district court focused much of its analysis on the opt-out notice claim, its order does not explicitly limit its analysis solely to that claim. *See* Resp. Mot. Remand, Doc. No. 16 at Ex. B. Therefore, the prior court evaluated Article III standing on both the unsolicited fax claim and opt-out notice claims, even if it did so implicitly.

    C.    <u>Change in Ninth Circuit Law</u>

Defendants' final argument that a change in Ninth Circuit case law independently forecloses issue preclusion is unpersuasive. Defendants correctly argue that issue preclusion generally does not apply when applicable law has changed. *See, e.g., Montana v. United States*, 440 U.S. 147, 158 (1979)("[C]ollateral estoppel extends only to contexts in which . . . applicable legal rules remain unchanged.") (quotations omitted). They point out that

Ninth Circuit case law changed mere days after the Central District of California's order, and the change in the law casts significant doubt as to whether the district court's order is still valid. *Van Patten*, 847 F.3d at 1043; *Cordoba v. DirecTV, LLC*, No. 1:15-CV-3755-MHC, 2017 WL 3309824, at *9 & n. 12 (N.D. Ga. July 12, 2017) ("Although [DIRECTV] urges the Court to follow *ARcare*, its holding appears to have been overruled by the Ninth Circuit's more recent decision (discussed supra) in *Van Patten*, 847 F.3d at 1043."). Curiously, QNAH did not make this argument when the case was remanded for the first time. *See ARcare v. Qiagen North American Holdings, Inc.*, Case No. 4:17-cv-00120-BSM, ECF No. 8 (E.D. Ark. March 2, 2017).

Here, however, it is simply inequitable to allow defendants to prevail on this argument, because the cited change in the law would have almost certainly caused QNAH to lose its Article III standing argument had *Van Patten* been decided just 11 days earlier. Taking advantage of this fact and having prevailed in California before the change in the law, it is now unfair for QNAH to change its mind about the issue and point to the Ninth Circuit decision simply to avoid preclusion or estoppel.

D. <u>Fees and Costs</u>

ARcare's motion, as it relates to reasonable attorneys' fees and costs, is denied. Under 28 U.S.C. section 1447(c), whether such fees and costs are appropriate turns on the reasonableness of removal, and the motive of the removing defendant is not considered. *Convent Corp. v. City of N. Little Rock, Ark.*, 784 F.3d 479, 483 (8th Cir. 2015). Like the prior order denying reasonable attorneys' fees and costs, the issues addressed herein do not

reach the merits of whether ARcare has Article III standing. Rather, it simply analyzes whether there has been a change in circumstances such that issue preclusion and judicial estoppel no longer apply.

## III. CONCLUSION

For the foregoing reasons, Arcare's motion to remand [Doc. No. 12] is granted except as to attorneys' fees and costs, and the case is remanded to Lonoke County Circuit Court.

IT IS SO ORDERED this 9th day of January 2018.

_____
UNITED STATES DISTRICT JUDGE